IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, et al.,

        Plaintiffs,

v.        CIVIL ACTION NO. 2:09-cv-00234

EMERSON NETWORK POWER, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendant South Charleston Electric Co., Inc.'s ("South Charleston") Motion for Summary Judgment [Docket 25]. Plaintiff St. Paul Fire and Marine Insurance Co. ("St. Paul"), as subrogee of City Holding Company ("City Holding"), filed a timely response to the motion [Docket 27], and South Charleston replied [Docket 29]. Because the statute of repose that South Charleston seeks to invoke does not apply, the court **DENIES** the Motion for Summary Judgment.

**I.    Background**

On May 24, 2007, a fire occurred at City Holding's headquarters in Cross Lanes, West Virginia. The fire caused damages in excess of $300,000, including destruction of the physical premises and business and personal property therein. At the time of the fire, City Holding had an insurance policy with St. Paul. Following the fire, City Holding submitted a claim under the policy, and St. Paul paid $315,212.05 to City Holding. St. Paul, subrogated to the rights of City Holding, is now pursuing recovery from the defendants.

St. Paul alleges that in December 1997, South Charleston sold City Holding a Liebert charger (the "original charger") and battery (the "original battery") and installed them on the premises of City Holding's headquarters. These comprised what is referred to here as the "UPS [uninterrupted power source] system." In November 2005, City Holding purchased a new Liebert charger (the "new battery") from a company other than South Charleston and installed it for use with the original charger. An electrical malfunction occurred in the UPS system, causing the fire in City Holding's headquarters in May 2007.

In order to recover its payments to City Holding, St. Paul filed suit against several defendants: Emerson Network Power, Liebert Services. Inc., which conducted quarterly battery maintenance at City Holding's headquarters in 2007; Liebert Corporation, which manufactured the batteries and charger; and South Charleston, which sold and installed the original charger and original battery. The Complaint asserts three counts against all defendants: negligence (Count I), breach of warranty (Count II), and strict liability (Count III).

South Charleston filed this Motion for Summary Judgment, arguing that because it did no work on the UPS system after December 1997, the causes of action against it are barred by the West Virginia statute of repose, West Virginia Code section 55-2-6a. That statute provides, in pertinent part,

> No action, whether in contract or in tort, for indemnity or otherwise, nor any action for contribution or indemnity to recover damages for any deficiency in the planning, design, surveying, observation or supervision of any construction or the *actual construction of any improvement to real property*, . . . may be brought more than ten years after the performance or furnishing of such services or construction . . . [.] The period of limitation provided in this section shall not commence until the improvement to the real property in question has been occupied or accepted by the owner of the real property, whichever occurs first.

W. Va. Code § 55-2-6a (emphasis added). Often referred to as an "architects' and builders'" statute, this provision encompasses more than just these professionals. It "extend[s] repose to defendants, not on the basis of their status as architect or builder, but on the precondition that they have performed one of the enumerated activities or services in the statute with respect to an improvement to real property." *Stone v. United Eng'g*, *A Division of Wean, Inc.*, 475 S.E.2d 439, 446 (W. Va. 1996). While a statute of limitations normally begins to run on the date of the alleged injury, a statute of repose forecloses a cause of action "after a stated time period regardless of when the injury occurred." *Gibson v. W. Va. Dep't of Highways*, 406 S.E.2d 440, 443 (W. Va. 1991) (internal quotation marks omitted) (modified in part by *Neal v. Marion*, Syl. Pt. 6, 664 S.E.2d 721, 722 (W. Va. 2008)).

St. Paul does not dispute that South Charleston has not worked on the UPS system since 1997. Rather, it argues that the statute of repose does not apply because South Charleston is "neither an architect or a builder" and the UPS system was "neither a construction material nor an integral part of the improvement to real property." (Pl.'s Resp. Def.'s Mot. Summ. J. 4, 5.) Instead, St. Paul maintains, the UPS system was "something that was added [after the headquarters was built] to protect the computer equipment within the building from damage or data loss in power outages" and thus does not constitute an "improvement to real property." (*Id.* at 5.)

**II.    Summary Judgment Standard**

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

## III. Discussion

The purpose behind the statute of repose is "to limit the time within which actions can be brought against architects, engineers, and others in the construction industry who are responsible for . . . 'the actual construction of any improvement to real property.'" *Stone*, 475 S.E.2d at 446 n.12 (internal quotation marks omitted). It is meant to

> protect architects and builders from the increased exposure to liability . . . . Without a statute of repose, a party injured because of a latent design or defect could sue an architect or builder many years after a construction project was completed. This

>could result in stale claims with a distinct possibility of loss of relevant evidence and witnesses.

*Gibson*, 406 S.E.2d at 446 (internal citations omitted). The issues raised by South Charleston's motion are whether the UPS system, as originally sold and installed, constitutes an "improvement to real property" under the West Virginia statute of repose, and implicitly, whether South Charleston was involved in the "actual construction" of the alleged improvement, so as to bar St. Paul's negligence, breach of warranty, and strict liability claims.[1]

I need not determine whether South Charleston's installation of the UPS system is an improvement to real property, because there is no evidence that the company was involved in the "actual construction" of the system. The UPS system consists of "a bank of batteries and a converter to provide power in case of a power failure. It is permanently installed and connected with the main power system," so that the batteries can provide ten minutes of power for an orderly shutdown of business, or power for ten seconds between a power failure and the generator start-up. (Moore Aff. ¶ 3.) According to Timothy Cowan, the vice president and facilities manager for City Holding, the UPS system was installed after City Holding's headquarters was built and renovated (i.e., the UPS system was not part of the original structure or subsequent renovations). The system was purchased "to protect the computer system and City Holding's banking operations from power fluctuations and outages." (Cowan Aff. ¶¶ 2-4.)

It is undisputed that South Charleston's only involvement with the property at issue was the sale and installation of the UPS system. But South Charleston argues that by installing it and

---

[1] Because South Charleston makes no claim and presents no evidence that it was involved in the "planning, design, surveying, observation or supervision" of any construction, I will not address that component of the statute here.

-5-

connecting it to City Holding's existing electrical system in 1997, it was "clearly involved in . . . the *actual construction*" of the system. (Reply Pl.'s Resp. Mot. Summ. J. 7 (internal quotation marks and citations omitted) (emphasis added).) I do not believe that the statute of repose contemplates such a conclusion.

First, South Charleston was not involved in — and the UPS system was not a part of — the original construction of City Holding's headquarters building, or subsequent renovations, which took place in the mid-1990s. (*See* Cowan Aff. ¶ 5 (stating that South Charleston "did not plan, design, construct or oversee the construction of the subject building or the renovations of the subject building").) Further, the Complaint states that South Charleston was in the business of "selling, distributing, installing, inspecting, servicing, maintaining and/or repairing" electrical systems. (Compl. ¶ 4.) It also alleges that South Charleston only "sold" and "installed" the original battery and original charger at City Holding's headquarters. (*Id.* at ¶ 7.) The only evidence submitted with South Charleston's Motion for Summary Judgment is the affidavit of John Moore, president of South Charleston, in which he admits that his company "did not choose, design, engineer, or manufacture" the UPS system. (Moore Aff. ¶ 6.)[2] The affidavit simply states that South Charleston "worked on electrical installations" at City Holding's headquarters, which involved "connect[ing the UPS system to the] main power system." (Moore Aff. ¶ 2, 4.) This was South Charleston's "limited role." (*Id.*) Another party checked the wiring and tested the system after its installation. (*Id.* at ¶ 4) Moore stated that he has no further records regarding the installation. (*Id.* at ¶ 7.)

---

[2]South Charleston's memoranda and Moore's affidavit refer to a Work Order memorializing the UPS installation as "Exhibit 1." However, this exhibit has not been filed on the record, and the only evidence submitted with South Charleston's motion is Moore's affidavit.

West Virginia law sheds little, if any, light on the meaning of the phrase "actual construction," and neither party attempts to provide a definition of the phrase. In *Shirkey v. Mackey*, the court extended repose to a contractor defendant who built a house on land that was allegedly "not properly compacted." 399 S.E.2d 868, 869 (W. Va. 1990) (modified in part by *Neal*, Syl. Pt. 6, 664 S.E.2d at 722). But there, whether the contractor "actually constructed" the house was not in issue. A great majority of the West Virginia cases have held that the statute does not apply to the particular cause of action or defendant, and they are also of little help to my analysis. *See, e.g.*, *Neal*, 664 S.E.2d at 727, 729 (statute does not apply to claims "arising from a representation that there were no defects [in the construction of a home] or knowingly concealing the extent of the defects or prior repairs" and only applies to "actions seeking damages for deficiencies in the construction of the improvement at issue, whether its planning, design or actual construction"); *Stone*, 475 S.E.2d at 447-48 (statute does not apply to those defendants who have not relinquished control over the property at issue); *Basham v. General Shale*, 377 S.E.2d 830, 833 (W. Va. 1988) (statute does not apply "in an action for damages against a manufacturer of allegedly defective construction materials").

The Supreme Court of Appeals of West Virginia has, however, previously defined "construction" in interpreting a West Virginia Department of Highways's insurance policy:

> In *Webster's Third New International Dictionary*[,] . . . "construction" is defined as "the act of putting parts together to form a complete integrated object." In *The Oxford English Dictionary*[,] . . . "construction" is stated as "the action of framing, devising, or forming, by putting together of parts; erection, building."
>
> . . .
>
> The court in *Carlson v. Kitsap County,* 124 Wash. 155, 158 (1923), stated that "in its common use 'construction' means the creation of something new, rather than the repair or improvement of something already existing[.]" Similarly, in *National*

> *Charity League, Inc. v. County of Los Angeles*, 164 Cal. App. 2d 241, 248 (1958), this statement was made: "We are satisfied . . . that the phrase 'in the course of construction' applies to a building from the time of its commencement to its completion." Finally, in *Hollis v. Erwin*, 237 Ark. 605, 613 (1964), the court considered what constituted the construction of a hospital and concluded that it was "more than a mere building of four walls and a roof," and that the "equipping" of the hospital was essential to its construction.

*Eggleston v. W. Va. Dep't of Highways*, 429 S.E.2d 636, 640 (W. Va. 1993) (some internal citations omitted). These definitions do not contemplate that the mere sale and installation of a backup generator in a previously erected structure is considered "construction," as it is commonly known. Furthermore, the only West Virginia case law expounding on the statute of repose involves actual contractors engaged in building real property structures, not sellers and installers of purported improvements to real property. And although *Stone* leaves some breathing room by not limiting the statute's scope to architects and builders, South Charleston — proffering only a bare-bones affidavit — has not convincingly shown that they "have performed one of the enumerated activities or services in the statute with respect to [the UPS system]." 475 S.E.2d at 446. Indeed, while South Charleston may not be an appropriate defendant under the facts of this case, the statute of repose is not the proper vehicle for judgment on its behalf.

**IV.     Conclusion**

For the reasons stated above, South Charleston's Motion for Summary Judgment is hereby **DENIED**. The court **DIRECTS** the Clerk to send a copy of this written opinion and order to counsel of record and any unrepresented party.

ENTER:     February 16, 2010

_____
Joseph R. Goodwin, Chief Judge