IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, et al.,

        Plaintiffs,

v.                              CIVIL ACTION NO.  2:09-cv-00234

EMERSON NETWORK POWER, et al.,

        Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court is a second Motion for Summary Judgment [Docket 50], filed by defendant South Charleston Electric Co., Inc. ("South Charleston Electric").  The motion is **DENIED in part** and **GRANTED in part**.

I.      **Background**

Plaintiff St. Paul Fire and Marine Insurance Co. ("St. Paul"), subrogee to the rights of its insured, City Holding Company ("City Holding"), brought this suit to recover payments made to City Holding after a serious fire at its headquarters in May 2007.  It is undisputed that the fire originated from the failure of a DC capacitor within an uninterruptible power supply system ("UPS system") installed at City Holding's headquarters.  St. Paul filed suit against several defendants that were involved with the UPS system, including South Charleston Electric, which installed the UPS system in 1997.

The Complaint asserts three counts:  negligence (Count I), breach of warranty (Count II), and strict liability (Count III).  St. Paul alleges that South Charleston Electric negligently failed to warn

City Holding of the need to replace the DC capacitors in the UPS system, that such a failure constituted a breach of the implied warranty of merchantability, and that South Charleston Electric is subject to strict liability as a seller of UPS systems.  South Charleston Electric seeks summary judgment on all three claims.  It claims that it performed no work on the UPS system after installing it in 1997 and that it was merely acting as a "middleman" with respect to City Holding's purchase of the UPS system, not as an ordinary "seller" of such systems.  South Charleston Electric also asserts that the implied warranty of merchantability claim is barred by the statute of limitations.

## II.      Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

## III.     Discussion

### A.      *Count I (Negligence) and Count III (Strict Liability)*

Drawing all permissible inferences in the light most favorable to St. Paul, there is a genuine issue of material fact as to the role played by South Charleston Electric with respect to the UPS system.  To refute South Charleston Electric's assertion that it performed no work on the UPS system after 1997, St. Paul has submitted two South Charleston Electric invoices, dated October 25, 2001, and April 2, 2002, that refer to work being performed on the UPS system.  (Pl.'s Opp. to

-2-

Summary Judgment, Ex. A [Docket 53-1].)  The 2002 invoice in the amount of $8,938.38, for example, reflects charges for "Trouble shoot UPS system" and "Order and replace (30) batteries." (*Id.*)[1] St. Paul also maintains that City Holding has additional bookkeeping records for which South Charleston Electric has not been able to locate invoices.  These charges include "repair to telephone room UPS" in November 1999 and "Repair switch in storage room & check UPS system" in August 2000.  (St. Paul's Mem. Opp. to Summary Judgment [Docket 53] at 3.)  In short, South Charleston Electric's assertion that it performed no work on the UPS system after 1997 is belied by the record, and thus a genuine issue of material fact exists on that issue.

There is also a genuine issue of material fact as to the role played by South Charleston Electric in providing the UPS system to City Holding in 1997.  South Charleston Electric contends that it served merely as a "middleman" or "agent" in purchasing and installing the UPS system.  It maintains that City Holding had previously selected the particular UPS system it wanted and that South Charleston Electric's limited role was to purchase the system from a distributor and then connect it to the main power system.  St. Paul, by contrast, asserts that South Charleston Electric was engaged in the business of selling UPS systems.  St. Paul points to the deposition testimony of South Charleston Electric's president in which he acknowledged that South Charleston Electric has installed ten UPS systems over the years and that his company marked up the price of this particular UPS system by ten percent when it sold it to City Holding.  (Pl.'s Opp. to Summary Judgment, Ex. B [Docket 53-2], at 9, 19-20.)  Moreover, South Charleston Electric's president admitted that his

---

[1] South Charleston Electric now asserts that these invoices were not for work "on technical parts of a UPS system," or "not for work on the UPS system itself."  (Def.'s Reply Mem. [Docket 54], at 2-3.)  Because the court cannot weight the evidence or determine the truth of the matter, however, there is a genuine issue of material fact as to the nature of the work performed by South Charleston Electric on the UPS system.

company had previously purchased UPS systems for other customers before.  (*Id.* at 14.)  In sum, there is a genuine issue of material fact as to whether South Charleston Electric acted as a "seller" of the UPS system in this transaction.

In light of these genuine issues of material fact, South Charleston Electric's Motion for Summary Judgment is **DENIED** as to Count I and Count III.

B.    *Count II (Breach of Warranty)*

The genuine issues of material fact with respect to Counts I and III have no effect, however, on the issue of whether the statute of limitations bars the breach of warranty claim in Count II of the Complaint.  Under Article 2 of the Uniform Commercial Code, as adopted in West Virginia, an implied warranty of merchantability arises by operation of law in any contract for the sale of goods where the seller is a merchant with respect to goods of that kind.  *See* W. Va. Code § 46-2-314.  As South Charleston Electric observes, however, such claims are limited by the Uniform Commercial Code's four-year statute of limitations, which runs from when "tender of delivery [of the goods] is made."  *Id.* § 46-2-725(2); *see also Taylor v. Ford Motor Co.*, 408 S.E.2d 270, 273 (W. Va. 1991) ("In essence, W. Va. Code, 46-2-725, is a statute of repose because the limitations period begins to run when the product is delivered, regardless of when the damages are incurred.").

In the instant case, South Charleston Electric tendered the goods in question – the UPS system – in 1997.  This action was not brought until 2009, well beyond the four-year statute of limitations set forth in the statute.  As to Count II, therefore, there is no genuine issue of material fact and South Charleston Electric is entitled to judgment as a matter of law on that claim.  Thus, South Charleston  Electric's Motion for Summary Judgment is **GRANTED** as to Count II.

## IV.   Conclusion

For the foregoing reasons, South Charleston Electric's Motion for Summary Judgment [Docket 50] is hereby **DENIED in part** and **GRANTED in part**.  Count I and Count III survive against South Charleston Electric.  The court **DIRECTS** the Clerk to send a copy of this written opinion and order to counsel of record and any unrepresented party.

ENTER:        October 15, 2010

Joseph R. Goodwin, Chief Judge